## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
|                                                     | )
| LABOR RELATIONS DIVISION OF                         | )
| CONSTRUCTION INDUSTRIES OF                          | )
| MASSACHUSETTS, *et al.*,                            | )
|                                                     | )
|                Plaintiffs,                          | )
|                                                     | )
| v.                                                  | )  Civil Act. No. 1:15-cv-10116-RWZ
|                                                     | )
| MAURA HEALEY, IN HER CAPACITY AS                    | )
| ATTORNEY GENERAL OF THE                             | )
| COMMONWEALTH OF MASSACHUSETTS,                      | )
|                                                     | )
|                Defendant.                           | )
_____ _ )


## DEFENDANT'S MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS



Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL


Pierce O. Cray, BBO # 104630
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2084
Pierce.Cray@state.ma.us


Dated:  April 17, 2015

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................ 1

II.  THE EARNED SICK TIME LAW
     AND THE PLAINTIFFS' ACTION .................................................. 2

III. SECTION 301 PREEMPTION IS LIMITED:  IT
     EXTENDS ONLY TO AN INDIVIDUAL STATE-LAW
     *CLAIM* IN A PARTICULAR LAWSUIT, AND THEN
     ONLY WHEN THE CLAIM'S RESOLUTION
     "DEPENDS UPON" THE MEANING OF A SPECIFIC
     COLLECTIVE BARGAINING AGREEMENT ..................................... 4

IV.  SECTION 301 PREEMPTS ONLY CERTAIN
     CBA-DEPENDENT STATE-LAW CLAIMS,
     AND NOT THE UNDERLYING STATE LAW
     ITSELF, THEREBY PRECLUDING THE PLAINTIFFS'
     PRE-ENFORCEMENT CHALLENGE TO THE EARNED SICK
     TIME LAW HERE ............................................................................ 8

     A.    Any Issue of Section 301 Preemption
           Is Not Ripe for Adjudication in the
           Absence of an Actual Claim
           Under the Earned Sick Time Law.............................................8

     B.    The Plaintiffs Also Fail to State a Claim,
           Because Section 301 Can Only Preempt
           an Individual Litigant's Particular State-Law
           Claim, Rather Than Invalidate the Underlying
           State Statute Itself ....................................................................11

V.   ONCE THE EARNED SICK TIME LAW GOES INTO
     EFFECT, IT WILL BE VERY HARD FOR EVEN
     AN INDIVIDUAL CLAIM UNDER IT TO TRIGGER
     SECTION 301 PREEMPTION.............................................................14

VI.  EVEN IF THE PLAINTIFFS' SECTION 301 CLAIM
     WERE OTHERWISE VIABLE, IT IS WELL OVERBROAD,
     SINCE THE ASSOCIATIONAL PLAINTIFFS LACK
     STANDING TO BRING CLAIMS ON BEHALF OF
     EMPLOYERS THAT ARE NOT MEMBERS OF THEIR
     ASSOCIATIONS...............................................................................19

VII. CONCLUSION...................................................................................20

## I.      INTRODUCTION

Last November, a decided majority of Massachusetts voters approved a ballot initiative establishing a right to earned "sick time" for workers across the Commonwealth.  Mass. St. 2014, c. 505 ("Earned Sick Time Law").  Prior to the voters' initiative, some Massachusetts workers could take for granted that they would not face employment consequences for staying home because of an acute illness or a sick child, but many other workers could not.  The latter often faced highly stressful dilemmas between, for example, caring for a child and risking termination.  Because of the Earned Sick Time Law, almost all Massachusetts workers will now enjoy at least some protection from these issues when it takes effect on July 1.  Those who work for employers with 11 or more employees will also have the right to be paid for the protected time they take, thus relieving them of the further difficult choice between health and income.

In the present suit, certain employers and employer representatives in the Massachusetts construction industry seek to eliminate these basic protections for a wide swath of the Commonwealth's work force:  all employees covered by a collective bargaining agreement ("CBA").  The plaintiffs claim that Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), preempts the Earned Sick Time Law as regards all unionized workers.  This reflects a fundamental misconception of the cited federal statute.  Section 301 preemption issues arise in the context of individual *claims*, often when an employer removes a worker's state-court action to federal court, contending that Section 301 preempts the worker's state-law claims.  This claim-specific focus is because Section 301 sometimes can (and sometimes cannot) be applied to preempt particular claims in particular lawsuits, in the context of particular CBA's.  The plaintiffs, however, are not waiting to see whether a given individual claim for an asserted Earned Sick Time Law violation is or is not preempted; they instead want to invalidate the Law

for all unionized workers right now, before it has even gone into effect. Such sweeping pre-enforcement relief would effect a radical and unprecedented expansion of Section 301 preemption, and two appellate decisions go directly against it. *Wisc. Cent., Ltd. v. Shannon*, 539 F.3d 751 (7th Cir. 2008); *Metro. Milwaukee Ass'n of Commerce v. Milwaukee*, 798 N.W.2d 287, 314 (Wisc. Ct. App. 2011). The broad-brush approach is particularly inappropriate when even after the Law has gone into effect, a large number of individual claims will clearly not be subject to preemption. The Court should accordingly reject the plaintiffs' attempted distortion of Section 301 and dismiss the present suit.

## II.    THE EARNED SICK TIME LAW AND THE PLAINTIFFS' ACTION

On November 4, 2014, the Massachusetts electorate voted strongly in favor of the Earned Sick Time Law, as proposed by initiative petition. Mass. St. 2014, § 505; *see* Mass. Const. Amend. Arts. 48, 74, 81 (initiative petition process).[1]   Codified at M.G.L. c. 149, § 148C, the Law will take effect on July 1, 2015. Mass. St. c. 505, § 4. It covers all workers in the Commonwealth except for those employed by the federal government and cities and towns. M.G.L. c. 149, § 148C(a) (adding that municipal workers can come under the Law if their municipality accepts its provisions pursuant to Mass. Const. Amend. Art. 65). Covered workers earn sick time at a rate of 1 hour for every 30 hours worked. *Id*. § 148C(d)(1). Once earned, up to 40 hours per year of sick time can be used, *id*. §§ 148(d)(4), (6), in increments at least as small as 1 hour, *id*. § 148C(d)(7).[2]   Permissible uses of the time include "care for . . . physical or

---

[1]      The margin of approval was 59% to 41% (not counting blank ballots). *See* https://www.sec.state.ma.us/ele/elepdf/rov14.pdf, at pgs. 56-57 (last visited April 17, 2015).

[2]      Employees start earning sick time when hired, but cannot use it until they have been on the job for 90 days. *Id*. § 148C(d)(1). They also can carry over up to 40 hours into the next calendar year, although they again cannot use more than 40 hours in any one calendar year. *Id*. § 148C(d)(7). Employers do not have to "pay out" unused sick time when a worker departs. *Id*.

mental illness, injury, or medical condition that requires home care, professional medical diagnosis or care, or preventative medical care," as well as "routine medical appointments" and time necessary to "address the psychological, physical or legal effects of domestic violence." *Id*. § 148C(c).  Sick time can be so used not only for the employee herself but also (with the exception of the domestic-violence provision) for the "employee's child, spouse, parent, or parent of a spouse." *Id*. §§ 148C(c)(1), (3).

All covered workers enjoy the protection of being able to take their earned sick time without fear of adverse consequences from their employer.  M.G.L. c. 149, § 148C(h) (prohibiting such actions); *see also id*. § 148C(i) (further barring employer retaliation for exercising rights under the Law).  Workers at firms with 11 or more employees have the additional right to be paid for the sick time they use, *id*. § 148C(d)(4), "at the same hourly rate as the employee earns from the employee's employment at the time the employee uses the paid sick time," *id*. § 148C(a). The Earned Sick Time Law makes clear that while these protections are a state-mandated "floor" of protection that an employee can always invoke, his or her employer remains free to offer improvements on them.  *Id*. § 148C(j) ("Nothing in this section shall be construed to discourage employers from adopting or retaining earned sick time policies more generous than policies that comply with the requirements of this section").  Along the same lines, employees covered by a CBA in effect on July 1 will have the option of pursuing alternative remedies under the CBA if its sick-time provisions are more generous than those in the Law.  *Id*. ("[N]othing in this section shall be construed to diminish or impair the obligation of an employer to comply with any [CBA] in effect on the effective date of this section that provides to employees greater earned sick time rights than the rights established under this section").

The plaintiffs are two construction contractors and six "employer association[s]" comprised of multiple members, all of whom are contractors in the construction industry and all of whom are signatory to various [CBA's] with various building trade unions."  Amended Petition for Declaratory Relief II (Docket No. 8-1) ("Complaint") ¶¶ 2-9.[3]  The defendant is the Attorney General of Massachusetts in her official capacity, *id*. § 11, who enforces the Earned Sick Time Law and can obtain declaratory or injunctive relief against employers that violate it. *Id*. ¶ 14; *see* M.G.L. c. 149, § 148C(l) (allowing individual workers to sue as well).[4]  The plaintiffs claim that Section 301 preempts the Earned Sick Time Law as regards "any and all" unionized workers.  Complaint ¶¶ 26-27.  They accordingly seek both a declaratory "judgment declaring that [the Law] is preempted with respect to employers who are signatory to [CBA's]" and a broad injunction prohibiting the Attorney General from (a) enforcing the Law against those employers and (b) authorizing employees to pursue their own private claims.  *Id*. pp. 6-7, Prayer for Relief ¶¶ 1-2; *but see* fn. 4 above.  As set forth below, however, Section 301 cannot provide the basis for the requested relief.

### III.   SECTION 301 PREEMPTION IS LIMITED:  IT EXTENDS ONLY TO AN INDIVIDUAL STATE-LAW *CLAIM* IN A PARTICULAR LAWSUIT, AND THEN ONLY WHEN THE CLAIM'S RESOLUTION "DEPENDS UPON" THE MEANING OF A SPECIFIC COLLECTIVE BARGAINING AGREEMENT.

Section 301 on its face serves only to provide federal courts with subject-matter jurisdiction over suits for violation of a CBA.  *See* 29 U.S.C. § 185(a) ("Suits for violation of

---

[3]     The Court has allowed the plaintiffs' Assented To Motion for Leave to File Amended Petition for Declaratory Relief II.  *See* Docket Nos. 8, 10.

[4]     The plaintiffs assert that "G.L. c. 149, § 148C(l) allows the [Attorney General] to grant private rights of action, pursuant to c. 149, §150, to employees against their employers for violations of" the Law.  Complaint ¶ 15.  This overstates the Attorney General's role as regards private litigation.  Section 150 allows an employee to file her own private action "90 days after the filing of a complaint with the attorney general, or sooner if the attorney general assents in writing."  M.G.L. c. 149, § 150.  The Attorney General's "gatekeeper" function thus applies only for the first 90 days after the employee files a complaint with her.

contracts between an employer and a labor organization . . . may be brought in any district court . . . having jurisdiction of the parties, without respect to the amount in controversy or . . . the citizenship of the parties").  However, it is also now settled that the statute "require[s] the federal courts to create a body of federal common law for [interpreting and enforcing] CBA's," *Cavallaro v. UMass Memorial Healthcare, Inc*., 678 F.3d 1, 5 (1st Cir. 2012), and, more importantly, that "[s]tate law claims implicating rights and duties under a CBA may be preempted by § 301."  *Fant v. New England Power Svc. Co*., 239 F.3d 8, 14 (1st Cir. 2001).   As articulated by the Supreme Court, the basic "principle of § 301 preemption" is that "if the resolution of a state-law claim depends upon the meaning of a [CBA], the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute."  *Lingle v. Norge Div. of Magic, Chef, Inc*., 486 U.S. 399, 405-06 (1988).  The First Circuit in turn has opined that "a state-law claim can depend upon the meaning of a [CBA] in either of two distinct ways:  on the one hand, a claim can allege the violation of a duty that arises from the CBA itself, or, on the other hand, a claim can require a court to interpret a specific provision of the CBA."  *BIW Deceived v. Local S6*, 132 F.3d 824, 829 (1st Cir. 1997).   As the foregoing passages make clear, and consistent with Section 301's role as a choice-of-law provision mandating that federal common law apply in the two indicated situations, any related preemption is limited to particular "claims" in individual lawsuits:  "§ 301 pre-empts state law *only* insofar as resolution of the state-law *claim* requires the interpretation of a [CBA]."  *Fant*, 239 F.3d at 15 (quoting *Lingle*, 486 U.S. at 409 n. 8) (emphasis added).

Consistent with the doctrine's claim- and lawsuit-specific focus, the most common procedural scenario presenting a question of Section 301 preemption is when a defendant has removed to federal court a state-court suit with ostensibly state-law claims.  *See, e.g*., *Pruell v.*

*Caritas Christi*, 645 F.3d 81, 82 (1st Cir. 2011).[5]  The defendant will support its removal by asserting "complete preemption," a special Section 301 rule that "transmutes certain state law claims into federal claims," thereby "permit[ting] their removal on the basis of [the] federal question doctrine." *Id*.[6]  If removal is appropriate, then various dispositions can await the "transmuted" former state-law claims, including "[t]reat[ment] . . . as federal claims under Section 301," *Magerer v. John Sexton & Co*., 912 F.2d 525, 527, 531 (1st Cir. 1990),[7] or, if only one aspect of the state-law claim is federalized (because that aspect would require interpretation of a CBA), resolution of the federal component under federal law and the remainder of the state claim under state law.  *See Lingle*, 486 U.S. at 413 n. 12 ("a state-law claim may depend for its resolution upon both the interpretation of a [CBA] and a separate state-law analysis that does not turn on the agreement.  In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not thereby be preempted.").[8]

---

[5]    If the suit is not removed, then the state court itself has to follow the same rules and standards for the preemption of state-law claims and the application of federal common law. *Teamsters v. Lucas Flour Co*., 369 U.S. 95, 102 (1962).

[6]    Section 301 "complete preemption" is an exception to the usual "well-pleaded complaint" rule, under which a federal court "generally has [federal-question] jurisdiction 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint,'" rather than in a defense asserted by the defendant.  *Magerer v. John Sexton & Co*., 912 F.2d 525, 528 (1st Cir. 1990) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (defense of preemption ordinarily not a basis for removal).  A few other federal statutes have this "complete preemption" effect as well.

[7]    Resolution as a Section 301 claim can often result in dismissal under federal law, either because the plaintiff has not resorted to the CBA's binding arbitration provision, *see*, *e.g*., *Magerer*, 912 F.2d at 531, or because the claim is untimely under the applicable federal limitations period, *see IBEW v. Hechler*, 481 U.S. 851, 863-64 (1987) ("If respondent's suit is treated as a § 301 claim, a court must determine whether her claim is time-barred by the applicable statute of limitations under federal law").  Such dismissals are *not* automatic; they instead depend on the application of specific federal-law rules to the facts of particular cases.

[8]    Even if the relevant CBA has an arbitration provision, the First Circuit has pointedly left open the possibility that the state-law claim could be "revived" after arbitration of the federal-

The Supreme Court has also made clear that when the status of a state-law claim is assessed under Section 301, preemption is hardly preordained.  Of particular relevance here, "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994).  As a result, "[m]ere parallelism between a state law claim and federal contract claim does not necessarily require state court interpretation of the CBA -- that is, as long as the state claim can be resolved without construing the agreement itself, it is not preempted by Section 301." *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 10 (1st Cir. 1999).  Sharp limits also exist on when preemption-triggering "interpretation" can be said to exist in a particular case.  The Supreme Court has thus "ma[de] plain . . . that when liability is governed by independent state law, the mere need to 'look to' the [CBA] for damages computation is no reason to hold the state-law claim defeated by § 301." *Livadas*, 512 U.S. at 125 (quoting *Lingle*, 486 U.S. at 413 n. 12).  And even when a CBA provision bears on an issue relating to liability rather than damages, preemptive "interpretation" "means a real interpretive dispute and not merely a pretended [one]." *Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 42 (1st Cir. 1997). [9]

---

law component.  *Cavallaro*, 678 F.3d at 7-8 (citing admonition in *Livadas v. Bradshaw*, 512 U.S. 107, 124 n.18 (1994) that "[h]olding the plaintiff's cause of action substantively extinguished may not . . . always be the only means of vindicating the arbitrator's primacy as the bargained-for contract interpreter").

[9]      It additionally should be noted that no aspect of the Labor Management Relations Act, including Section 301 and its preemption doctrine, applies to public employers and employees, whether they be federal, State, or local.  *See, e.g.*, *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (D.C. Cir. 2009) (per curiam) ("As the language of the LMRA makes plain, public employees are not covered by that statute") (citing 29 U.S.C. § 152(2)); *Ayres v. Int'l Broth. Of Elec. Workers*, 666 F.2d 441, 442-44 (9th Cir. 1982) (state employee may not sue under Section 301); *Ignacio v. County of Hawaii*, 937 F.Supp.2d 1220, 1229 (D. Haw. 2013) (public employee "not subject to the preemptive effect of [S]ection 301").

**IV.   SECTION 301 PREEMPTS ONLY CERTAIN CBA-DEPENDENT STATE-LAW CLAIMS, AND NOT THE UNDERLYING STATE LAW ITSELF, THEREBY PRECLUDING THE PLAINTIFFS' PRE-ENFORCEMENT CHALLENGE TO THE EARNED SICK TIME LAW HERE.**

Given the narrow, claim-specific nature of Section 301 preemption, the plaintiffs' attempt to commandeer it for a broad assault on a duly enacted state law cannot stand.  Two alternative grounds dictate this result.  First, as an analogous Seventh Circuit decision explains, any attempt to assert Section 301 preemption is not ripe for review in the absence of an actual state-law claim by a specific plaintiff.  *Wisc. Cent.,* 539 F.3d at 751.  Subject matter jurisdiction therefore does not exist.  Second, as the Wisconsin Court of Appeals has ruled, "Section 301 preemption does not invalidate a state law but instead preempts the application of a state law in the context of a particular case."  *Metro. Milwaukee*, 798 N.W.2d at 314.  The Complaint therefore also fails to state a claim, making dismissal appropriate under Rule 12(b)(6) as well as Rule 12(b)(1).

**A.   Any Issue of Section 301 Preemption Is Not Ripe for Adjudication in the Absence of an Actual Claim Under the Earned Sick Time Law.**

Ripeness raises an issue of subject-matter jurisdiction, *Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003), and as such should be addressed first.  *See, e.g.*, *In Re TJX Cos. Retail Sec. Breach Lit.*, 564 F.3d 489, 492 (1st Cir. 2009).  "The 'basic rationale' of the ripeness inquiry is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"  *R.C. Bishop of Springfield v. Springfield*, 724 F.3d 78, 89 (1st Cir. 2013) (quoting *Abbott Labs. v. Garder*, 387 U.S. 136, 148 (1967)).  "There are two factors to consider in determining ripeness: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *Id*. (quoting *Abbott Labs*., 387 U.S. at 149) ("[w]e generally require both prongs to be satisfied").  The plaintiffs cannot meet this standard here, as a recent Seventh Circuit decision makes plain.  *Wisc. Cent.,* 539 F.3d at 751.

-8-

In *Wisconsin Central*, the Illinois Department of Labor began investigating a railroad for violating that State's overtime law, and the railroad filed a federal suit to enjoin the investigation (just as the present plaintiffs seek to enjoin the Attorney General from enforcing the Earned Sick Time Law against them). 539 F.3d at 754-55.  The railroad maintained that because the affected workers were covered by CBA's, the Illinois agency's investigation was preempted by the Railway Labor Act, 45 U.S.C. §§ 151-88,  which has a preemption standard  that the Supreme Court has held to be identical to the Section 301 standard.  539 F.3d at 756-57 ("'depend[s] on the interpretation' of the CBA"); *see Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263 (1994) ("we adopt the *Lingle* [Section 301] standard to resolve claims of RLA preemption").  Rejecting this pre-enforcement preemption challenge as unripe, the Seventh Circuit held that it did not satisfy either component of the *Abbot Laboratories* ripeness standard.  539 F.3d at 759-61.  As to the first factor ("fitness of the issues for judicial decision"), the case-specific nature of the Section 301 standard made a pre-enforcement challenge inherently premature:

> [T]he question of whether a state law is preempted by virtue of a CBA 'requires [a] case-by-case factual analysis to determine the extent to which a state law claim will require interpretation of a CBA.'
>
> Here, . . . the parties have not yet staked out a position . . . as to what these CBA provisions mean, making it impossible to determine at this stage of the proceedings whether a disagreement will exist that will require . . . CBA interpretation.
>
> . . . Because preemption . . . will only occur if the parties dispute the CBA's terms, and even then, arguably only if the dispute is relevant as to liability as opposed to damages, the record is not sufficiently developed for this Court to engage in the case-by-case factual analysis required by [the Section 301 standard].

Id. at 760.  The Seventh Circuit reached a similar conclusion as regards the second *Abbot* factor ("hardship to the parties of withholding court consideration").  Characterizing the railroad's only relevant potential hardship as the "need to defend itself in an enforcement action" that would be

"ultimately preempted," *id*. at 761, the Seventh Circuit ruled that it was far too early to determine whether that would in fact be the case:

> [T]he claim that the [Illinois agency]'s investigation should be halted based upon [ultimate preemption] is not ripe for consideration, since this is not a circumstance where the [agency]'s investigation and subsequent enforcement of the State's overtime laws would invariably lead to a finding of preemption. . . . [E]ven if the [agency] brought suit against [the railroad] . . . , scenarios exist where it would be unnecessary for the CBA's to be interpreted in order to resolve the claim.

*Id*.[10]

If a pre-enforcement challenge to a nascent investigation against a specific employer can thus be premature, then *a fortiori* a preemptive attack on enforcement of a statute as regards all CBA-signatory employers cannot be ripe. While *Wisconsin Central* implied that ripeness might exist once the parties there "stake[d] out a position . . . as to what the[ ] CBA provisions mean," 539 F.3d at 760, here the plaintiffs' suit by its very formulation is divorced from the particulars of *any* specific CBA, let alone from whether disputes might exist over the meaning of its provisions that would require judicial interpretation. The myriad individual workers who might bring private enforcement actions are indeed not even defendants in this case, thereby making it impossible to divine what their positions regarding particular CBA provisions would be and, therefore, whether a dispute would exist between them and the plaintiffs' members over the meaning of those provisions. A suit structured in the manner of the present one will *never* produce a ripe controversy, since the possibility of preemption will always be hypothetical and conjectural. *See In re Bentz*, 253 F.3d 283, 289 (7th Cir. 2001) ("As one would expect in case-

---

[10]     The Seventh Circuit had previously identified "examples" of those "scenarios" as "includ[ing] (1) when 'the particular contractual provision is so clear as to preclude all possible dispute over its meaning,' . . . ; (2) if 'the parties d[o] not dispute the interpretation of the relevant CBA provisions,' . . . ; or (3) where reference to the CBA is only necessary for computing damages." *Id*. at 758 (citations omitted).

by-case analysis, in some situations [Section 301] preemption is found and in others it is not").

The Court accordingly should dismiss the plaintiffs' suit for lack of subject-matter jurisdiction.

> **B.     The Plaintiffs Also Fail to State a Claim, Because Section 301
> Can Only Preempt an Individual Litigant's Particular State-Law Claim,
> Rather Than Invalidate the Underlying State Statute Itself.**

An alternative ground for dismissing this action is that it fails to state a claim upon which

relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), for the reasons specified by the Wisconsin

Court of Appeals in *Metro. Milwaukee*, 798 N.W.2d at 314.  That case involved a law nearly

identical to the one at issue here:  "an ordinance providing paid sick leave for employees within

the City of Milwaukee that was enacted [by the voters] pursuant to the direct legislation statute."

*Id.* at 293.  A local business association mounted a pre-enforcement facial challenge to the

ordinance on an array of grounds, including Section 301 preemption, *id.* at 295, but the Court of

Appeals upheld the law on all counts.  As to the claim that the sick-leave "ordinance is

preempted by § 301 . . . because [it] necessarily requires the Milwaukee Equal Rights

Commission to interpret [CBA's]," the Wisconsin Court opined:

> [T]his argument is based on a misunderstanding of § 301.  Section 301
> preemption does not invalidate a state law but instead preempts the application of
> a state law in the context of a particular case.
>
> Section 301 . . . preempts "an a*pplication* of state law . . . only if such *application*
> requires the interpretation of a [CBA]."  *Lingle*[,] . . . 486 U.S. 399, 413 . . . .
> Section 301 does not "preempt state rules that . . . establish rights and obligations,
> independent of a labor contract."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202,
> 212 . . . (1985). . . .
>
>  Because the [sick-leave] ordinance establishes rights and obligations independent
> of labor contracts, the ordinance is not preempted by § 301.  If a particular claim
> under the ordinance at some point requires an interpretation of the sick leave
> provisions in a [CBA], § 301 would preempt state law and require the application
> of federal law only on the interpretation of the [CBA].  The ordinance would
> otherwise govern the resolution of the claim.

*Id.* at 314 (emphasis added by Wisconsin Court of Appeals).

*Metro Milwaukee* is directly on point here.  The plaintiffs do not challenge the application of the Earned Sick Time Law in a particular suit by an individual worker or the Attorney General claiming a denial of the Law's benefits. This is unsurprising, as the Law has not even gone into effect yet.  *See* St. 2014, c. 505, § 4. The plaintiffs instead attack the Law on a wholesale basis, seeking to invalidate it up front as to "any and all" workers covered by a CBA. Complaint ¶¶ 26-27.  This is precisely what *Metro Milwaukee* holds cannot be done, since "Section 301 preemption does not invalidate a state law but instead preempts [its] application . . . in the context of a particular case."  798 N.W.2d at 314.

Three considerations confirm the correctness of the Wisconsin Court's conclusion.  *First*, it directly follows from how the Supreme Court has described the nature of Section 301 preemption -- as affecting the "application" of State law in the context of a particular "claim." *See*, *e.g*., *Lingle*, 486 U.S. at 405-06 ("if the resolution of a state-law claim depends upon the meaning of a [CBA], the application of state law . . . is preempted"); *Allis-Chalmers*, 471 U.S. at 209 ("question . . . is whether this particular Wisconsin tort, as applied, would frustrate the federal labor-contract scheme established in § 301").  The First Circuit's "basic test" is similarly that "[S]ection 301 preempts a state-law claim wherever a court, in passing upon the asserted state-law claim, would be required to interpret a plausibly disputed provision of the [CBA]." *Martin*, 105 F.3d at 42 (emphasis added); *accord Cavallaro*, 678 F.3d at 4-6; *Pruell*, 645 F.3d at 82; *O'Donnell v. Boggs*, 611 F.3d 50, 53-54 (1st Cir. 2010) ("[w]hether a given claim is completely preempted depends importantly on the elements of that claim under state law and the content of the applicable CBA.").  Section 301 preemption is really just a choice-of-law rule, akin to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), that dictates the law that the Court must apply when resolving a particular case.  *See Brown v. Trustees of Brown Univ.*, 891 F.2d 337,

363-64 (1st Cir. 1989) (the "argument that section 301 . . . preempted state law wrongful discharge claim affects only choice of law . . . and therefore was subject to waiver").

*Second*, the Complaint makes no effort to speak in terms of the settled tripartite standard that *does* govern preemption of an actual state law:  express preemption; field preemption; and conflict preemption.  *See*, *e.g.*, *Fitzgerald v. Harris*, 549 F.3d 46, 52-53 (1st Cir. 2008).  This is likely because the plaintiffs recognize that "preemption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the state." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987).  The Supreme Court has indeed squarely held that the National Labor Relations Act -- specifically, its so-called *Machinists* field-preemption doctrine -- did *not* "intend[ ] to prevent the States from establishing minimum employment standards that labor and management would otherwise have been required to negotiate." *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 750-58 (1985) (no NLRA field preemption of State law mandating minimum mental-health benefits in general-insurance policies); *accord Fort Halifax*, 482 U.S. at 20-21 (same re State law requiring one-time severance payment in event of plant closing).[11]  The present suit is in reality an impermissible attempt to sidestep these NLRA rulings and use Section 301 as a "back door" means of obtaining the very relief that the Supreme Court denied in *Metropolitan Life* and *Fort Halifax* (invalidation of a State minimum employment standard).  *See Caterpillar, Inc. v. Williams*, 482

---

[11]     "'*Machinists* preemption' is recognition of Congress's intention to occupy the field of labor dispute resolution, prohibiting state regulation of areas outside the four corners of the NLRA if Congress intended them 'to be controlled by the free play of economic forces.'" *Amer. Steel Erectors, Inc. v. Local Union No. 7*, 536 F.3d 68, 84 (1st Cir. 2008) (quoting *Machinists v. Wist. Empl. Rel. Comm'n*, 427 U.S. 132, 140 (1976)).  *Metropolitan Life* and *Fort Halifax* subsequently made clear that this preemption doctrine "is concerned with ensuring an equitable bargaining process, not with the substantive terms that may emerge from such bargaining." *Fort Halifax*, 482 U.S. at 20.  As a result, substantive employment "rights under state law that form a 'backdrop' for [labor-management] negotiations" are not affected by it.  *Id.* at 21.

U.S. 386, 396 n.10 (1987) ("Section 301 does not . . . require that all 'employment-related matters involving unionized employees' be resolved through collective bargaining and thus be governed by a federal common law created by § 301.").

*Third*, the plaintiffs' requested relief of denying all unionized workers in Massachusetts the protections of the Earned Sick Time Law would in fact violate the NLRA. This can be seen from *Livadas*, which concerned the California Labor Commissioner's policy of not enforcing certain wage-payment provisions in that State's Labor Code "on behalf of individuals . . . whose terms and conditions of employment are governed by a [CBA] containing an arbitration clause." 512 U.S. at 110. After ruling that Section 301 did not justify the application of this policy in the case of the particular plaintiff-worker before it, *id*. at 121-25, the Supreme Court then "held that federal law pre-empts th[e Labor Commissioner's] policy, as abridging the exercise of [CBA-covered] employees' rights under the . . . NLRA[.]" *Id*. at 111. The same result would obtain here, where a general employee-protection law is again at issue, and the only difference is that the plaintiffs are asking this Court to order what the California Labor Commissioner did voluntarily -- deny the benefit of that general state law to unionized workers, solely because of their union status. Section 301 cannot be the vehicle for that, just as it was not in *Livadas*, and the plaintiffs' pre-enforcement assault on the Earned Sick Time Law fails to state a claim.

## V.    ONCE THE EARNED SICK TIME LAW GOES INTO EFFECT, IT WILL BE VERY HARD FOR EVEN AN INDIVIDUAL CLAIM UNDER IT TO TRIGGER SECTION 301 PREEMPTION.

The rejections of pre-enforcement challenges in *Wisconsin Central* (for lack of ripeness) and *Metro Milwaukee* (for failure to state a claim) both cited the fact that, were individual claims later to be made under the state labor laws at issue, there would clearly be some claims that would *not* be preempted. *Wisconsin Central*, 539 F.3d at 761 ("this is not a circumstance where

the [agency]'s investigation and subsequent enforcement of the State's overtime laws would invariably lead to a finding of preemption"); *Metro Milwaukee*, 798 N.W.2d at 314 ("If a particular claim under the ordinance at some point requires an interpretation of . . . a [CBA], § 301 would preempt state law . . . only on the interpretation of the [CBA].  The ordinance would otherwise govern the resolution of the claim.").  It is just as plain here that there would be many non-preempted individual claims as well.[12]

The Earned Sick Time Law represents the Massachusetts electorate's determination that all State and private workers in the Commonwealth should have an independent, non-negotiable state-law right to a minimum amount of earned sick time.  Claims under the Law are therefore presumptively outside Section 301's reach, because "[i]n *Lueck* and *Lingle* . . . , [the Supreme Court] underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law."  *Livadas*, 512 U.S. at 123.  Instead, "a plaintiff covered by a [CBA] is permitted to assert rights *independent* of that agreement."  *Caterpillar*, 482 U.S. at 396 (emphasis in original).  This is true even when the CBA and independent State law address exactly the same topic and turn on "precisely the same set of facts," *Livadas*, 512 U.S. at 123, and it is true regardless of whether the CBA-conferred rights are more or less protective than the State law rights.  *See Caterpillar*, 482 U.S. at 394-95.

Although claims based on independent state employment rights are thus presumptively beyond Section 301, the Supreme Court has not yet foreclosed the possibility that "concededly 'independent' state-law litigation may nonetheless entail some [CBA] application."  *Livadas*,

---

[12]     To be clear, the Attorney General maintains that the present suit could not stand even if all or almost all such individual claims ultimately would be preempted – Section 301 preemption is simply not an appropriate vehicle for directly attacking the underlying state law itself.  *See* Sections III-IV above.  That so many individual claims would not be preempted, however, reinforces the correctness of dismissal here.

512 U.S. at 124 n. 18; *accord Lingle*, 486 U.S. at 407 n. 7 ("conceivable" that this could occur).[13]

Even in such an event, however, three factors render preemption of a claim under the Earned

Sick Time Law extremely unlikely.  (1)  While the plaintiffs stress that CBA's will have to be

consulted to determine a worker's "rate of pay" for a violation of the Law, Complaint ¶ 20, that

clearly goes to damages, and "*Lingle* makes plain . . . that when liability is governed by

independent state law, the mere need to 'look to' the [CBA] for damages computation is no

reason to hold the state-law claim defeated by § 301." *Livadas*, 512 U.S. at 125.[14]  (2) Even if

"rate of pay" were somehow to go to liability rather than damages, "the bare fact that a [CBA]

will be consulted in the course of state-law litigation plainly does not require the claim to be

extinguished" "where the meaning of contract terms is not the subject of dispute."  *Livadas*, 512

U.S. at 124; *accord Martin*, 105 F.3d at 42 ("real interpretive dispute" required).  For

"interpretation" to be required, the relevant portion of the CBA therefore must be both complex

and disputed -- something that cannot be presumed for a topic like pay rates, which is capable of

being addressed with a simple rate sheet, a straightforward table, or even a few numbers.  (3)

Even if a CBA's pay-rate provision were (a) to bear on liability, (b) to be disputed, and (c) to be

complex enough to require "interpretation," the Supreme Court has twice specified that

preemption of the broader state-law claim would *not* necessarily follow.  *Livadas*, 512 U.S. at

---

[13]     The First Circuit views "Supreme Court doctrine" on the extent of this possibility as
"unstable."  *Cavallaro*, 678 F.3d at 4.  Any such instability should be resolved in favor of claims
based on non-negotiable state-law rights never being subject to CBA-based Section 301
preemption.  *See Lingle*, 486 at 410 n. 10 ("Clearly, § 301 does not grant the parties . . . the
ability to contract for what is illegal under state law.").

[14]     Pay rates are also wholly irrelevant to a claim under the Earned Sick Time Law regarding
any employee at a company with ten or fewer employees.  As described in Section II above, such
employees accrue earned but *unpaid* sick time under the Law -- they can take an earned sick
day without adverse employment consequences, but they do not get paid for it.  G.L. c. 149,
§ 148C(d).  Rate of pay therefore would play no role in those employees' claims.

124 n. 18 ("Holding the plaintiff's cause of action substantively extinguished may not . . . be the only means of" resolving matter); *Lingle*, 486 U.S. at 413 n. 12 ("federal law would govern interpretation of the agreement, but the separate state-law analysis would not thereby be preempted").[15]

Not surprisingly given these principles, numerous Circuit Court decisions have declined to use Section 301 to preempt individual claims based on state statutes that, like the Earned Sick Time Law, impose minimum employment protections for all private workers. *See, e.g.*, *Valles v. Ivy Hill Corp.*, 410 F.3d 1073, 1076, 1082 (9th Cir. 2005) (claim under state meal-period statute not preempted) ("§ 301 has not become a 'mighty oak' that might supply cover from all substantive aspects of state law"); *Hernandez v. Conriv Realty Assoc.*, 116 F.3d 35, 40 (2nd Cir. 1997) (claim under state wage-payment statute not preempted); *Kohl's Food Stores, Inc. v. Hyland*, 32 F.3d 1075, 1079 (7th Cir. 1994) (no preemption of claim under state statute entitling workers to be rehired after on-the-job injury). Even more District Court decisions are in accord,[16] and any attempt to use Section 301 to preempt an Earned Sick Time Law claim would face an uphill battle.

---

[15]    In addition, any claim requiring CBA "interpretation" in an enforcement action by the Attorney General would not be subject to an arbitration provision in the CBA, since the Attorney General did not herself agree to arbitrate. *See, e.g.*, *BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to arbitrate."). The court in which the Attorney General brought her enforcement action instead would interpret the CBA itself, applying federal common law standards in doing so. *See Lucas Flour*, 369 U.S. at 102.

[16]    *See, e.g.*, *Rivera v. U.S. Tsubaki, Inc.*, __F.Supp.3d __, 2015 WL 477196, *6 (D. Mass. 2015) (claim under state sex-discrimination statute not preempted, even though CBA does have provisions bearing on an issue in that claim); *LaRosa v. United Parcel Svc., Inc.*, 23 F.Supp.2d 136, 147  (D. Mass. 1998) (same re claims under state age- and handicap-discrimination statute); *Kaye v. Orange Reg'l Med. Ctr.*, 975 F.Supp.2d 412 (S.D.N.Y. 2013) ( no preemption of New York Labor Law claims for nonpayment for work done during meal periods and rest breaks); *Snyder v. Dietz & Watson, Inc.*, 837 F.Supp.2d 428, 452 (D.N.J. 2011) (same re claim for violation of New Jersey's Minimum Wage Act).

The Complaint suggests that the plaintiffs will argue that unionized workers' claims under the Law will be preempted because of the Law's provision that "nothing in this this section shall be construed to diminish or impair the obligation of an employer to comply with any [CBA] in effect on the effective date of this section that provides to employees greater earned sick time rights than the rights established under this section." Complaint ¶ 16 (quoting G.L. c. 149, § 148C(j)); *accord id.* ¶ 21. The plaintiffs presumably will rely on First Circuit decisions such as *Martin*, 105 F.3d at 40, that hold that Section 301 preempts retaliatory-discharge claims under the Massachusetts Workers Compensation Statute because of provisos in that law stating that "'[i]n the event any right set forth in this section is inconsistent with an applicable [CBA],' the agreement shall prevail." *Id.* at 42-43 (quoting M.G.L. c. 152A, §§ 75A, 75B(3)). Those cases are clear, however, that their holdings turn on the unique wording of the just-quoted provisos,[17] and the language in the Earned Sick Time Law is altogether different. While the Workers Compensation Statute provides that its requirements will always yield to a CBA's "inconsistent" provisions, thereby necessitating a review of the CBA in every case to determine if there is such an inconsistency, the Earned Sick Time Law's proviso simply preserves a worker's right to continue to rely upon any greater protections in the CBA. Nothing in the terms of the Earned Sick Time proviso *requires* the worker (or the Attorney General) to proceed under the CBA, even when the agreement's sick-time provisions are stronger. If either instead chooses to proceed under the Earned Sick Time Law, the Supreme Court is clear that Section 301 does not disturb that choice. *Caterpillar*, 482 U.S. at 394-95 ("It is true that respondents . . . possess

---

[17]     *See*, *e.g.*, *id.* at 43 ("It is very doubtful whether, without this last-quoted proviso, Shaw's would have any plausible claim of federal preemption. Massachusetts has an independent interest in regulating injury compensation; and apart from the proviso, the elements of . . . Martin's state-law claims appear to be independent of [the CBA's] provisions.").

substantial rights under the [CBA], and could have brought suit under § 301.  As masters of the

complaint, however, they chose not to do so.").  There accordingly would be no reason to refer to

any CBA sick-time provisions in the event that the Law's protections are invoked, and Section

301 remains quite ill-suited as a vehicle for preempting claims under the Law.[18]

## VI.    EVEN IF THE PLAINTIFFS' SECTION 301 CLAIM WERE OTHERWISE VIABLE, IT IS WELL OVERBROAD, SINCE THE ASSOCIATIONAL PLAINTIFFS LACK STANDING TO BRING CLAIMS ON BEHALF OF EMPLOYERS THAT ARE NOT MEMBERS OF THEIR ASSOCIATIONS.

One final defect in the Complaint is that it requests relief for far more employers than the

plaintiffs have standing to proceed on behalf of.  The Complaint thus seeks to enjoin the

Attorney General (1) "from granting any and all employees[ ] who are members of collective

bargaining units[ ] a private right of action under" the Earned Sick Time Law and (2) "from

enforcing the [Law] . . . against employers who are signator[ies] to [CBA's]."  Complaint ¶¶ 26-

27.   While these claims are asserted on behalf of all Massachusetts employers who executed

CBA's, the associational plaintiffs do not purport to represent all such Commonwealth firms.

They instead represent only those specific employers who are members of their respective

associations, "all of whom are contractors in the construction industry."  *Id*. ¶¶ 2-7.  The

Commonwealth has many unionized employers outside the construction field, and the

associational plaintiffs clearly go well beyond their membership in the relief they seek.

This they cannot do.  "In the ordinary course, a litigant must assert his or her own legal

rights and interests, and cannot rest a claim to relief on the legal rights and interests of third

parties."  *Powers v. Ohio*, 499 U.S. 400, 410 (1991).  A "limited exception[ ]" exists:

> We have recognized the rights of litigants to bring actions on behalf of third
> parties, provided three important criteria are satisfied:  The litigant must have

_____

[18]      Also, as noted in fn. 9 above, public employees are not subject to Section 301 at all.

suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Id.* at 410-11 (citations omitted).  Here the second and third factors are inapplicable on their face.  The construction-industry associations plainly do not have "a close relation" to every unionized employer in the Commonwealth, and those unionized employers are fully capable of suing on their own should they wish to.  The Court accordingly lacks subject-matter jurisdiction over all claims on behalf of employers other than the plaintiffs and their members, thus adding a further infirmity to this aspect of the Complaint.

## VII.   CONCLUSION

For the foregoing reasons, the Attorney General respectfully requests that the Court allow Defendant's Motion to Dismiss.

Dated:  April 17, 2015                              Respectfully submitted,

                                                    MAURA HEALEY
                                                    ATTORNEY GENERAL

                                                    /s/ Pierce O. Cray
                                                    Pierce O. Cray, BBO # 104630
                                                    Assistant Attorney General
                                                    Office of the Attorney General
                                                    One Ashburton Place
                                                    Boston, MA 02108
                                                    (617) 963-2084
                                                    Pierce.Cray@state.ma.us

### CERTIFICATE OF SERVICE

I, Pierce O. Cray, Assistant Attorney General, hereby certify that the foregoing document, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 17, 2015.

                                                    /s/ Pierce O. Cray
                                                    Pierce O. Cray, BBO # 104630
                                                    Assistant Attorney General