UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
LABOR RELATIONS DIVISION OF CONSTRUCTION )
INDUSTRIES OF MASSACHUSETTS; ASSOCIATED )
GENERAL CONTRACTORS' LABOR DIVISION; )
BUILDING TRADES EMPLOYERS' ASSOCIATION )
OF BOSTON AND EASTERN MASSACHUSETTS; )
NEW ENGLAND MECHANICAL CONTRACTORS' )
ASSOCIATION; BOSTON CHAPTER, NATIONAL )          C.A. No. 1:15-cv-10116-RWZ
ELECTRICAL CONTRACTORS' ASSOCIATION; )
PLUMBING-HEATING-COOLING CONTRACTORS' )
ASSOCITION OF GREATER BOSTON; BARLETTA )
ENGINEERING CORPORATION; and CENTURY )
DRYWALL, INC. )
   Petitioners, )
)
    v. )
)
MAURA HEALEY, IN HER CAPACITY AS THE )
ATTORNEY GENERAL FOR THE COMMONWEALTH )
OF MASSACHUSETTS )
   Defendant. )
_____)

## MEMORANDUM OF LAW OF AMICUS CURIAE MASSACHUSETTS AFL-CIO AND SEIU STATE COUNCIL IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

In November 2014, voters overwhelmingly approved a ballot initiative requiring

Massachusetts employers to provide five sick days per year. Now, seven associations of

unionized construction employers and two individual unionized construction employers petition

this Court to allow them to continue denying sick leave to their employees. Petitioners seek a

radical result that would prevent not only their employees from enjoying the benefits of the new

Sick Time Law, but would affect hundreds of thousands of other unionized workers as well.[1]

---

[1] Although the Petitioners' complaint centers on a large array of specific building trades in the construction industry, the relief petitioners seek, if granted, would apply to a remarkable number of workers covered by collective bargaining agreements in the Commonwealth. An incomplete list of such workers includes the following professions: bakery and confectionary, bartenders, bookkeepers, brewers, bus drivers, cafeteria and food service, car

Their theory is that the new law will require interpretation of the wage sections of their various collective bargaining agreements, thus preempting any enforcement efforts pursuant to Section 301 of the Labor-Management Relations Act ("LMRA").  29 U.S.C. § 185. However, the U.S. Supreme Court has *repeatedly* "underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994) ("Livadas"). Compounding Petitioners' dilemma is another longstanding rule that a need to interpret a CBA to determine damages does not result in preemption. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413, n. 12 (1988) ("Lingle").

Moreover, the Sick Time Law is a complex statute that not only requires employers to provide sick leave, but also includes provisions concerning anti-retaliation, amount of pay owed during leave, and limits on an employer's ability to require a doctor's note or advance notice of leave. Because the Sick Time Law does not take effect until July 1, no claims have actually been made. When they do arise, it will be in a multitude of circumstances and under differing collective bargaining agreements ("CBAs"), each of which will require careful case-by-case adjudication. Declaratory Judgment is an improper vehicle to consider this almost endless array of hypothetical claims.

For these reasons, Defendant's Motion to Dismiss should be granted.

## I.    Statement of Interest

The interests of proposed *amici* Massachusetts AFL-CIO and SEIU State Council are contained on pages 2-5 of their Motion for Leave to Participate as Amicus Curiae.

---

rental clerks, cashiers, chauffeurs, chemists, clinicians, concierge, cooks, custodians, engineers, factories and manufacturing, gaming, home health aides, housekeepers, industrial laundry and linen, janitors, lab technicians, longshoremen, machinists, meatpackers, mechanics, motion picture technicians, musicians, nurses, nursing home and rehabilitation, parking attendants and valets, retail clerks, riggers, security guards, stagehands, stock clerks, textile workers, truckers, waiters and waitresses, and warehouse clerks.

**II.      The Complaint**

Petitioners are employer associations in the construction industry and are signatories to CBAs with building trade unions or individual employers in the construction industry that are signatories to CBAs.  Complaint ¶¶ 2-9.  Petitioners allege that determination of employees' hourly rates under the Sick Time Law will require unspecified interpretation of unspecified provisions of unspecified CBAs in unspecified cases.  Complaint ¶ 20.  Petitioners make an equally unspecific allegation that the Sick Time Law's provisions in M.G.L. c. 149, § 148C(j) require interpretation of CBAs.  Complaint ¶ 21.  This section states that

> Nothing in [the Sick Time Law] shall be construed to discourage employers from adopting or retaining sick time policies more generous than policies that comply with the requirements of [the Sick Time Law] and nothing in [the Sick Time Law] shall be construed to diminish or impair the obligation of an employer to comply with any contract, collective bargaining agreement, or any employment benefit program or plan in effect on the effective date of [the Sick Time Law] that provides to employees greater earned sick time rights than the rights established under [the Sick Time Law].

M.G.L. c. 149, § 148C(j).

Based on these allegations, Petitioners request that the Court declare that the Sick Time Law is facially preempted by Section 301.  Complaint ¶¶ 26-27.  Petitioners further request that the court enjoin the Attorney General from issuing civil citations under the Sick Time Law against employers who are signatories to CBAs and from granting private rights of action to employees who are members of collective bargaining units.  Complaint, Prayer for Relief, ¶ 2. Essentially, Petitioners seek to have the court enjoin any enforcement of the Sick Time Law against unionized employers.  While Petitioners do not claim employees who are members of collective bargaining units do not have the right to earned sick leave pursuant to the Sick Time Law, it asks the Court to deprive these employees of any forum to enforce that right and other, related rights.

Petitioners do not enclose any CBAs with their Complaint.  This is perhaps because Petitioners' CBAs contain no reference whatsoever to sick leave.  <u>See</u> Affidavit of Tolman and attached Exhibits.

### III.     Argument

Petitioners' case misconstrues the nature of Section 301 Preemption.  Petitioners take a doctrine that, in carefully defined situations, seeks to prevent courts from using state law to interpret CBAs and transmogrifies it into an all-devouring beast that consumes the state law rights of employees and leaves nothing in its wake.  An examination of the history and bounds of Section 301 preemption shows that this transformation is not only radical and new, but wholly wrong.  There can be no dispute that states have the right to establish minimum labor standards, such as the Sick Time Law, and that Section 301 does not interfere with that right.

### A.  States Have the Right to Establish Minimum Labor Standards for all Workers, Including those Workers Covered by CBAs

It has long been recognized that the states have the ability to regulate conduct in the workplace by enacting minimum labor standards.  "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State." <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 756 (1985) ("<u>Metropolitan Life Ins. Co.</u>") (<u>quoting from</u> <u>DeCanas v. Bica</u>, 424 U.S. 351, 356 (1976)).[2]  In enacting the interlocking set of federal labor laws governing labor relations, including the National Labor Relations Act and the LMRA, the federal government did not intend to displace the States' rights to create minimum labor standards.  <u>E.g. id</u>. at 756 ("there is no suggestion in the legislative history of the [NLRA] that Congress intended to disturb the myriad state laws then in existence that set

---

[2] Minimum labor standards are a concept shared by cases involving <u>Machinists</u> preemption and cases involving Section 301 preemption.  <u>See also</u> <u>Allis Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 212 (1985).  <u>Machinists</u> preemption has no role in this case, <u>see</u> footnote 5, <u>infra</u>, and cases involving <u>Machinists</u> preemption, such as <u>Metropolitan Life Ins. Co.</u> are cited merely to help explain the meaning of the phrase "minimum labor standards."

minimum labor standards, but were unrelated in any way to the process of bargaining or self-organization."); Livadas, 512 U.S. at 123 (Section 301 "cannot be read broadly to preempt nonnegotiable rights conferred upon employees as a matter of state law") These state minimum labor standards thus apply to union and non-union employees alike, for "[i]t would turn the policy that animated the [NLRA] on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on nonunion employers." Livadas, 512 U.S. at 129 (quoting from Metropolitan Life Ins. Co., 471 U.S. at 756). See also Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212 (1985) ("Lueck") (rejecting the notion that unions and employers could exempt themselves from "state labor standards": "Clearly, [LMRA] § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law."); see also Rhode Island Hospitality Ass'n v. City of Providence ex rel. Lombardi, 667 F.3d 17, 32 (1st Cir. 2011) (applying the minimum labor standards doctrine).

> **B. Pursuant to the Right to Establish Minimum Labor Standards, Massachusetts Voters Enacted the Sick Time Law by Ballot Initiative in November of 2014**

In November of 2014, the voters of Massachusetts passed a new minimum labor standard in the form of the Sick Time Law. The Sick Time Law was passed by an overwhelming majority of voters (59.4%) in a ballot initiative.[3] Minimum labor standards are those which set labor standards "independent of the collective-bargaining process [that] devolve on [employees] as individual workers, not as members of a collective organization." Metropolitan Life Ins. Co., 471 U.S. at 755 (internal quotations omitted). The Sick Time Law provides just those sorts of individual benefits, independent of the bargaining process: It gives employees the right to forty hours off per year, M.G.L. c. 149, § 148C(d), for certain illness-related reasons, id. at 148C(c),

---

[3] https://www.sec.state.ma.us/ele/elepdf/rov14.pdf at pgs. 56-57 (last visited April 17, 2015).

with the guarantee of their normal pay when an employer has more than eleven employees, id. at

148C(d).  The Sick Time Law also provides employees with the right not to be required to

provide a doctor's note when out for less than 24 consecutively scheduled work hours, id. at

148C(f), and to only be required to provide advance notice when the need for sick leave is

"foreseeable," id. at 148C(g).  Further, the Sick Time Law allows employees to use their earned

sick leave without fear of retaliation or negative employment consequences.  Id.  All of these are

individual rights which are not displaced by the NLRA and which Unions and Employers cannot

contract away under the guise of Section 301 preemption.

### C.  Section 301 Preemption

To understand why the Sick Time Law is not displaced by Section 301 of LMRA, it is

important to understand the history and context of Section 301.  Section 301 is a modest section,

which, by its terms, allows suits for violations of "contracts between an employer and a labor

organization representing employees in an industry affecting commerce, or between any such

labor organization" to be brought in any U.S. District Court having jurisdiction over the parties.

29 U.S.C. § 185(a).  The U.S. Supreme Court long ago interpreted this section to authorize

federal courts to fashion a federal law of contracts for the interpretation and enforcement of

CBAs.  Textile Workers v. Lincoln Mills of Ala., 353 U.S. 448, 451 (1957) ("Lincoln Mills").

The U.S. Supreme Court later concluded that state courts could entertain suits under Section 301,

but were required to apply the federal law of contracts developed under Lincoln Mills in

interpreting CBAs rather than any state law of contracts.  Teamsters v. Lucas Flour Co., 369 U.S.

95, 103-104 (1962); Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 507 (1962).  These cases

emphasized the need for a single body of law for interpreting CBAs.  E.g., Teamsters v. Lucas

Flour, 369 U.S. at 103 ("The possibility that individual contract terms might have different

meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.").[4] Principal among the concern for uniformity is the federal labor policy favoring arbitration, which "is at the very heart of the system of industrial self-government" governed by Section 301. <u>United Steelworkers of Am. v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 581 (1960).

Relying on its conclusion that CBAs were required to be interpreted under an exclusively federal body of law, the U.S. Supreme Court went on to develop a body of law governing Section 301 preemption. Based on its concerns with uniformity, the Supreme Court held that the state tort claim at issue was preempted by Section 301 in a suit in which the plaintiff argued the defendant had not acted in good faith in administering a disability plan governed by a CBA. <u>Lueck</u>, 471 U.S. at 220-21. The Court held that, where "the resolution of a state-law claim is substantially dependent upon analysis of the terms of the agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim… or dismissed as pre-empted by federal labor-contract law." <u>Id.</u> at 220 (internal citations omitted). However, the Court emphasized the limited nature of its holding:

> [There is not] any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. <u>Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law.</u> In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

---

[4] Later cases interpreted <u>Lucas Flour</u> to establish a doctrine of Section 301 preemption, <u>see</u> <u>Allis-Chalmers v. Lueck</u>, 471 U.S. 202, 209-210 (1985), though <u>Lucas Flour</u> itself does not use the word preemption except in passing reference to the entirely separate doctrine of preemption of suits within the exclusive jurisdiction of the National Labor Relations Board. <u>Lucas Flour</u>, 369 U.S. at 97, 101 n. 9.

Id. at 211-12 (footnotes omitted) (emphasis supplied).  Correspondingly, the Court relied heavily on the fact that the tort claim at issue was not independent of the labor contract in question and instead concluded that "[t]he duties and rights established through the state tort thus derive from the rights and obligations established by the contract."  Id. at 217.

These limitations on the scope of Section 301 played out in subsequent Supreme Court cases.  In Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988), the court determined that a plaintiff's claim under a state law forbidding retaliation for filing a worker's compensation claim was not preempted under Section 301 where the CBA at issue had a provision preventing the plaintiff's employer from discharging her without just cause.  Id. at 401.  The Court reasoned that the elements of plaintiff's claim were "purely factual questions" and did not require interpretation of a CBA.  Id. at 407.  The Supreme Court again limited the scope of Section 301 preemption, reiterating that "pre-emption should not be lightly inferred in this area, since establishment of labor standards falls within the traditional police powers of the state."  Id. at 412 (quoting from Fort Halifax v. Coyne, 482 U.S. 1, 21 (1987)).

In Livadas v. Bradshaw, 512 U.S. 107 (1994), the Supreme Court's most recent ruling on Section 301 preemption, the Court held that a state administrative agency's refusal to enforce a statute requiring payment of wages due to employees upon termination against unionized employers was invalid because it abridged employees' rights under the National Labor Relations Act ("NLRA").  Id. at 110.  In reaching this conclusion, the Court rejected the claim made by the defendants that Section 301 preempted the application of the state law at issue to employees covered by a CBA with an arbitration clause.  Id. at 121-25.  As it did in every previous case, the Supreme Court underlined the fact that Section 301 preemption was a confined doctrine that served discrete interests.  Id. at 122-24.  The court emphasized that Section 301 "cannot be read

broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Id. at 123.  It also indicated that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation does not require the claim to be extinguished." Id. at 124.

Vitally, in each of these cases, the U.S. Supreme Court engaged in a careful analysis of whether a state cause of action, as applied to the facts of a particular case, was preempted by Section 301. Lueck, 471 U.S. at 209 ("The question posed here is whether this particular Wisconsin tort, as applied, would frustrate the federal labor-contract scheme established in § 301.") (emphasis supplied); Lingle, 486 U.S. at 413 ("In sum, we hold that an application of state law is preempted by [Section 301] only if such application requires the interpretation of a collective-bargaining agreement.") (emphasis supplied); Livadas, 512 U.S. at 124-25, n. 19 (analyzing the individual plaintiff's claim for Section 301 pre-emption and upon finding that it was not pre-empted, stating that "[t]his is not to say, of course, that a [claim under this state law] could never be pre-empted by § 301.")

Further, the aspect of the federal law of labor contracts which each case sought to preserve was the requirement that issues which the parties to a CBA agreed to bring before an arbitrator in fact be brought before an arbitrator.  See Lueck, 471 U.S. at 219 (noting preemption is important to "preserve the central role of arbitration in our system of industrial self-government") (quoting Warrior & Gulf Nav. Co., 363 U.S. at 581); Lingle, 486 U.S. at 411 (noting the importance of preserving the role of arbitration in the interpretation of CBAs); Livadas, 512 U.S. at 122 (primary purpose of Section 301 federal common law is to "assure that agreements to arbitrate grievances would be enforced, regardless of the vagaries of state law….")

In sum, Section 301 preemption is a circumscribed doctrine intended to ensure that a consistent body of law is applied in interpreting CBAs.  The doctrine carefully balances federal labor policy with states' power to regulate the workplace.  It is explicitly not a means by which unionized employers may exempt themselves from state minimum labor standards.  Section 301 preemption is applied on a case-by-case basis:  In each case, the court determines if analyzing liability involves resolving an interpretive dispute between the parties regarding the meaning of the terms of a particular CBA.  Section 301 preemption's main goal is to preserve the parties' agreement to have certain claims heard by a labor arbitrator.  These careful distinctions are important and cannot be ignored without destabilizing the balance between the rights of the union and nonunion workforce and the state and federal government's ability to act within the employment sphere.[5]

### D.  Petitioners Ask this Court to Do What the Supreme Court Found Unlawful in <u>Livadas</u>

The actual Section 301 Preemption doctrine directly contrasts with the claims Petitioners bring in this case. While they use the phrases of Section 301 Preemption in their complaint, Petitioners' obvious goal in bringing this case is to exempt themselves from the Sick Time Law's requirement that they provide employees with up to 40 hours of sick leave each year.  Petitioners notably do not ask the court to declare that the substantive requirements of the Sick Time Law are preempted as to employees covered by a CBA.  Instead they ask the court to declare that all modes of recourse for enforcing these rights are cut off by Section 301.

---

[5] There are two additional types of federal labor law pre-emption that are not at issue in this case, both of which arise under the National Labor Relations Act, rather than the LMRA.  One is "<u>Garmon</u> preemption," which preserves the exclusive jurisdiction of the National Labor Relations Board over claims within its sphere.  <u>San Diego Bldg. Trades Council v. Garmon</u>, 359 U.S. 236, 245 (1959).  The second is "<u>Machinists</u> preemption," which prevents states from placing a thumb on the scale in labor-management disputes, but has no effect on the ability of states to implement minimum labor standards like those at issue in this case.  <u>Metropolitan Life Ins. Co.</u>, 471 U.S. at 755-757; <u>Machinists v. Wisconsin Employees Relations Comm'n</u>, 471 U.S. 724, 750 (1976).  <u>See also</u> <u>Metropolitan Milwaukee Ass'n of Commerce, Inc. v. City of Milwaukee</u>, 332 Wis.2d 459, 510-512 (2011) (separately analyzing <u>Garmon</u>, <u>Machinists</u>, and Section 301 preemption; finding that none preempted city's sick leave ordinance).

The mismatch between Petitioners' clear goals and roundabout means to obtain them shows that Section 301 preemption does not play the role Petitioners claim. Section 301 preemption "does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law," <u>Lueck</u>, 471 U.S. at 212, and "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law," <u>Livadas</u>, 512 U.S. at 123. Indeed, attempts by administrative agencies to read Section 301 preemption to *per se* prevent enforcement of state law rights against employers who are signatories to CBAs have been found to illegally abridge the NLRA § 7 rights of employees. <u>Id</u>. at 132.

In asking this court to declare the Sick Time Law unenforceable as to all employers who are signatories to CBAs, Petitioners seek a result generally forbidden under <u>Livadas</u>. The only scenario in which Petitioners' goal is not proscribed by federal law is one in which <u>every</u> potential claim under the Sick Time Law by private-sector employees covered by a CBA is preempted by Section 301, because, as outlined above, Section 301 preemption is applied on a case-by-case basis. For this reason, when a Wisconsin appellate court was confronted with a nearly identical claim it rejected Petitioners' argument. <u>Metropolitan Milwaukee Ass'n of Commerce v. City of Milwaukee</u>, 332 Wis.2d 459, 512-13 (2011). The court reasoned that "Section 301 Preemption does not invalidate a state law but instead preempts the application of a state law in the context of a particular case." <u>Id</u>. at 512.

The reasoning of <u>Metropolitan Milwaukee Ass'n of Commerce</u> applies here. Petitioners cannot show that every potential claim (or even most potential claims) under the Sick Time Law are preempted by Section 301. While some claims in some cases[6] might involve the interpretation of a CBA, many others would simply involve "purely factual questions," <u>Lingle</u>,

---

[6] Petitioners' case is not such a case, because none of the CBAs they have negotiated provide for any sick leave.

486 U.S. at 407, and thus not be subject to pre-emption.  Here is a small sample of potential

claims in which no interpretation of a CBA is involved:

- A claim by an employee that he or she was fired for insisting that he or she was entitled to time off under the Sick Time Law.  See M.G.L. c. 149, § 148C(i) Compare Lingle, supra.

- A claim by an employee seeking an injunction that she be allowed to take time off for qualifying reasons when he or she has worked 1,200 hours in the current calendar year but has been told by her employer that she cannot use any sick leave whatsoever.  See M.G.L. c. 149, § 148C(d).

- A claim by an employee who takes a single sick day and is required to produce a doctor's note and is fired for not doing so.  See M.G.L. c. 149, § 148C(f).

- A claim by an employee that he was told by his employer that she could not take sick time when he woke up with the flu because he did not provide one week's notice.  See M.G.L. c. 149, § 148C(g).

- A claim by an employee that he was denied a promotion because he took four sick days the previous year.  See M.G.L. c. 149, § 148C(h).

- A claim by a group of employees seeking a declaration that their employer violated the Sick Time Law when they were required, on multiple occasions, to utilize an entire day's worth of sick leave when they were absent from work for only one or two scheduled work hours.  See M.G.L. c. 149, § 148C(c)(7).

- A claim by an employee seeking an injunction allowing him to use sick time to care for his parent, after he was told by his employer that he was not allowed to take sick time to care for his sick parent.  See M.G.L. c. 149, § 148C(c)(1).

- A claim by an employee that she was fired when she notified the Attorney General of a violation of the Sick Time Law. See M.G.L. c. 149, § 148C(i).

- A claim by the Attorney General that an employer failed to post a notice of employees' rights under the Sick Time Law at the only site at which its employees work. See M.G.L. c. 149, § 148(o).

Petitioners ask this court to hold that, for employees under a CBA, all of these claims, as well as

the many other types of claims that imagination cannot conceive but reality will produce, are

preempted by Section 301.  They ask that the court so find without any specifics whatsoever.

Petitioners do not specify which CBA, let alone which term of that CBA, will be required to be

interpreted.  Nor do they point to the specific aspects of claims that require preemption.  This they cannot do, because they are seeking to have this court declare that every potential claim for every employee under every CBA will be pre-empted.  Such a broadside attack on a state statute creating individual rights for employees simply does not fit within the framework of Section 301 preemption.

Perhaps most jarringly, Petitioners ask the court to take this unprecedented action when their own CBAs have no provisions concerning sick time that the Court could even plausibly interpret.  A field of claims that might be pre-empted against other employers – such as a claim that the ambiguous accrual formula under a CBA did not provide sufficient sick time under the Sick Time Law or a claim that unclear terms of the CBA indicate that sick leave may not be used for all purposes allowed under the Sick Time Law – are clearly not preempted against the Petitioners, since their contracts have no provisions regarding sick time which a court would be required to "refer to," let alone actually interpret, as is required for Section 301 preemption.  See Livadas, 512 U.S. at 125.

The provisions of the Sick Time Law pointed to by the Petitioners in their Complaint do not change this analysis.  Petitioners first indicate that all claims under the Sick Time Law "require a determination of the 'hourly rate' of a worker covered by a collective bargaining agreement."  Complaint ¶ 20.  While certain claims might require the court to determine employees' hourly rate, many will not, including the claims listed supra which involve an employee seeking to take the time off without reprisal, rather than pay for that time off.  And this provision will be wholly irrelevant for any employer with fewer than eleven employees, as they are only required to provide unpaid sick leave.  M.G.L. c. 149, §§ 148C(d)(3), (4), (6).

Even in that subset of cases in which a determination of an employee's hourly rate is required, Section 301 preemption does not necessarily occur.  If liability can be determined without a determination of an employee's hourly rate, then preemption does not occur even if the hourly rate must be assessed for damages.  See Livadas, 512 U.S. at 124.  For example, if an employer refuses to pay anything for an employee's sick time earned under the Sick Time Law, it has violated the Sick Time Law, regardless of that employee's regular rate.  Compare M.G.L. c. 149, § 148C(a) (employers must pay the effective minimum wage for earned paid sick time).  Further, when determination of an employee's hourly rate is required in assessing liability, that determination does not lead to Section 301 preemption unless the parties have a dispute as to the employee's hourly rate.  See Livadas, 512 U.S. at 124 (noting that, in previous Supreme Court cases "we were clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").  In order to trigger preemption, such a dispute must be *bona fide* and involve actual interpretation of the terms of the CBA. Martin v. Shaw's Supermarkets, Inc., 105 F.3d 40, 42 (1st Cir. 1997) (in order to trigger Section 301 preemption, there must be "a real interpretive dispute and not merely a pretended dispute. Indeed, the Supreme Court [in Livadas] has said that the need merely to refer to the agreement in passing will not necessarily preempt.") (emphasis in original).

The provision of the Sick Time Law cited by the Petitioners, Complaint ¶ 21, stating that it does not "diminish or impair the obligation of an employer to comply with any… collective bargaining agreement… in effect on the effective date of this section that provides employees greater earned sick time rights than the rights established under this section" does not help Petitioners at all.  This section preserves the contractual rights of employees above and beyond

those provided by the Sick Leave Law, but in no way undercuts their minimum protections under the Sick Leave Law.  If an employee claims a violation of his or her contractual rights above what is provided by the Sick Leave Law, this is not the provenance of a claim under the Sick Leave Law.  Conversely, if an employee claims a violation of his or her rights under the Sick Leave Law, this provision does not affect whether the court will need to engage in contractual interpretation, as it does not permit employers to waive or otherwise affect any statutory rights. Petitioners thus have not presented any basis for a finding that all potential claims under the Sick Time Law will be preempted by Section 301.

If Petitioners' claim goes forward as a facial challenge to the Sick Time Law, it will be a brave new world for Section 301 preemption.  Section 301 preemption will no longer strike a careful balance between the need to have a uniform body of federal contract law for interpreting CBAs and the state law employment rights of unionized employees.  Instead, employees who join a union that negotiates a CBA will forfeit their state law employment rights, radically disrupting the balance between the union and non-union sectors.  Such a regime exactly mirrors the one found unlawful by the Supreme Court in Livadas.  Such a result is not correct; Livadas itself would have come out differently if it were.  Finally, this change would also raise serious federalism concerns that the Supreme Court has repeatedly flagged, by displacing the traditional and broad role of the states to regulate their workforce whenever a CBA is present.  For these reasons, Petitioners' claims must be dismissed.

### E.  Petitioners' Claim Is not Ripe for Adjudication

For similar reasons, Petitioners' claim that the Sick Time Law is preempted by Section 301 is not ripe for adjudication.  This is because Petitioners' declaratory judgment claim does not address any particular anticipated lawsuit, but every potential lawsuit under the Sick Time Law.

In order for a claim to be ripe for adjudication, it must pass a two-part test.  <u>Ernst & Young v. Depositors</u>, 45 F.3d 530, 535 (1st Cir. 1995) (<u>citing</u> <u>Abbott Labs v. Gardner</u>, 387 U.S. 136, 149 (1967)).  First, the court must determine that the issue is fit for review, a test that "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not be sufficiently developed."  <u>Ibid</u>. "[T]he critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all."  <u>Id</u>. at 536 (<u>quoting from</u> <u>Massachusetts Ass'n of Afro-American Police, Inc. v. Boston Police Dep't</u>, 973 F.2d 18, 20 (1st Cir. 1992)).  Second, the court must consider the "extent to which hardship looms," which typically revolves around whether the "challenged action creates a direct and immediate dilemma for the parties."  <u>Id</u>. at 535 (internal quotations and citations omitted).

Analysis of Section 301 preemption requires knowledge of the exact facts of the claim which an employer avers is preempted.  This is because, while express or field preemption of state law generally present "purely legal questions,"

> [t]his is not the case, however, for preemption questions under the RLA, or its parallel provision in § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  [<u>See</u> <u>Hawaiian Airlines v. Norris</u>, 512 U.S. 246, 260, 114 S.Ct. 2239 (1994)] (describing these standards as "virtually identical"). … [T]he question of whether a state law is preempted by virtue of a CBA, "requires [a] case-by-case factual analysis to determine the extent to which a state law claim will require interpretation of a CBA." [<u>In re Bentz Prods. Co.</u>, 253 F.3d 283, 285 (7th Cir. 2001)] (discussing preemption under § 301 of the LMRA).

<u>Wisconsin Cent., Ltd. v. Shannon</u>, 539 F.3d 751, 760 (7th Cir. 2008).  ("<u>Wisconsin Cent.</u>")

The court in <u>Wisconsin Cent.</u> analyzed an employer's declaratory judgment claim seeking a court order, under the provision of the Railway Labor Act ("RLA") equivalent to Section 301, preventing all enforcement of a state wage and hour law against that employer because that claim involved interpretation of a CBA.  <u>Id</u>. at 755.  The Court found this claim not fit for review because it was "impossible to determine at this stage of the proceedings whether a

disagreement will exist that will require an arbitrator, under the terms of the RLA, to engage in…

CBA interpretation." Id. at 760. As to the second ripeness requirement, the court found no

hardship warranting review, noting that the potential hardship that a finding of Section 301

preemption would avoid "is not [the employer's] need to comply with the State's overtime

requirements or the current investigation, but is rather the possibility that it will need to defend

itself in an enforcement action ultimately preempted due to the need for an arbitrator, rather than

a court, to interpret the CBAs." Id. at 761. Because neither of the prongs for ripeness was met,

the court dismissed the case as unripe.

Similarly, the court in Alaska Airlines Inc. v. Schurke, 193 L.R.R.M. 2150, 2012 WL

503862 (W.D. Wash. 2012) found that a facial claim that a Washington employment statute was

preempted by the RLA's provision equivalent to Section 301 not to be ripe for review:

> [The Employer] does not base its declaratory judgment action on a particular flight
> attendant's claim; it seeks to preempt the [state agency's] investigation of all claims.
> Consequently, the court cannot even begin to analyze the issues presented in this matter.

Id. at *12. See also id. at *9 (court cannot analyze Section 301 pre-emption absent a specific

employee's complaint).

The Petitioners in this case have brought a claim that is even less ripe than those brought

by the employers in Wisconsin Ltd. and Schurke. The employer in Schurke sought to have the

court declare all potential claims against that employer were preempted by Section 301. That

was not ripe. The employer in Wisconsin Ltd. sought to have the court declare that a pending

investigation against that employer was preempted by Section 301. That was also not ripe. In

contrast, Petitioners seek to have the court declare all potential claims under the Sick Leave Law

against them and every other employer who has signed a CBA declared preempted by Section

301, before the relevant law has even gone into effect. This is clearly not ripe. There is no way

17

to know which, if any, of the potential claims under the Sick Leave Law will require

interpretation of a CBA and which, if any, of those claims will involve a disagreement about the

meaning of the CBA.  While Petitioners may be able to present a ripe dispute in some future case

involving a dispute about a particular employee's rights under a particular CBA in a particular

factual scenario, they simply have not done so here.

**F.   Section 301 Preemption Does Not Require Extinguishment of any Claim Brought by the Attorney General Because the Attorney General Cannot Exhaust the Grievance and Arbitration Process**

The animating principle of Section 301 preemption is preservation of the arbitrator's

jurisdiction. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) ("A rule that permitted an

individual to sidestep available grievance procedures would cause arbitration to lose most of its

effectiveness...").  Still, a labor arbitrator's jurisdiction is not absolute.  Even though "federal

labor policy requires that individual employees wishing to assert contract grievances must

attempt use of the contract grievance procedure," Republic Steel Corp. v. Maddox, 379 U.S. 650,

652 (1965), a failure to exhaust will be excused by a union's breach of its duty of fair

representation.  Vaca v. Sipes, 386 U.S. 171, 185 (1967).  In such cases, an employee may ask a

court to directly interpret the terms of a CBA.  Vaca, 386 U.S. at 187.  Since employees can be

excused from exhausting grievance procedures, it must be that a party without *any* access to

arbitration will also be excused.

The Attorney General has not agreed to have an arbitrator hear any claims it might bring

against unionized employers.  This is because "[a]rbitration is strictly a matter of consent and

thus is a way to resolve those disputes – but only those disputes – that the parties have agreed to

submit to arbitration." Granite Rock Co. v. International Broth. of Teamsters, 561 U.S. 287, 299

(2010) (internal citations and quotations omitted).  Arbitration agreements between two private

parties do not bind government agencies to utilize arbitration when they have a dispute with one of those parties and do not deprive government agencies of the right to bring statutory claims. E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002).

Without an obligation to arbitrate, the Attorney General can proceed in court. "The First Circuit has stated that in deference to agreed-to remedies, courts ordinarily dismiss state claims pre-empted by § 301 so long as relief can be provided within the CBA process." Clee v. MVM, Inc., --- F.Supp.3d ---, 2015 WL 1055820, *8 (D.Mass. 2015) (Wolf, J.) (emphasis added); Vera v. Saks, 335 F.3d 109, 116-119 (2nd Cir. 2003) (employee's failure to exhaust grounds for dismissal on Section 301 preemption grounds); Sokos v. Hilton Hotels Corp., 283 F.Supp.2d 42, 52-53 (Dist.D.C. 2003).  Because the Attorney General can neither exhaust the grievance procedure, nor obtain relief through it, its enforcement actions must not be extinguished pursuant to Section 301 preemption.

### G.  If Petitioners Seek an Injunction Covering Public Employers or Unionized Employers without Collective Bargaining Agreements, Their Claims Are Baseless

Finally, to the degree Petitioners seek a declaration that claims by unionized employees not covered by the LMRA or not subject to a CBA, their claim is overbroad.  See Complaint ¶¶ 26-27 (requesting declaration as to Section 301 preemption's impact on all collectively bargained employees, without regard to whether they are subject to a CBA, in the private sector, or covered by the RLA).  See also 29 U.S.C. § 185(a) (Section 301 covers suits for violations of "contracts between an employer and a labor organization"); 29 U.S.C. § 142(3) (LMRA's definition of "employer" and "labor organization" derived from 29 U.S.C. §§ 151-169's definition of "employer" and "labor organization"); 29 U.S.C. § 152(2) (excluding federal and state governments and employers covered by the RLA from definition of "employer").

### IV.    Conclusion

Petitioners have not stated a claim upon which relief can be granted.  Their facial attack on the application of the Sick Time Law to unionized employees is outside the scope of Section 301 Preemption.  In addition, Petitioners' claim is not ripe.  Given these fatal flaws, Petitioners attempt to exempt themselves and every other employer who has signed a CBA from the requirements of the Sick Time Law should be dismissed.

Respectfully submitted,

**MASSACHUSETTS AFL-CIO**

By its attorneys,

 /s/ Jasper Groner
Donald J. Siegel, Esq. BBO #461500
James A.W. Shaw, Esq. BBO #670993
Louis A. Mandarini, Esq. BBO #669293
Jasper Groner, Esq., BBO #682403
**SEGAL ROITMAN, LLP**
111 Devonshire Street, 5th Fl.
Boston, MA 02109
(617) 742-0208

Dated: April 17, 2015            jgroner@segalroitman.com

**SERVICE EMPLOYEES STATE COUNCIL OF MASSACHUSETTS OF THE SERVICE EMPLOYEES INTERNATIONAL UNION**

By its attorney,

/s/ Katherine D. Shea
Katherine D. Shea
BBO# 549771
Pyle Rome Ehrenberg PC
2 Liberty Square, 10th Floor
Boston, MA 02109
(617) 367-7200

Dated: April 17, 2015            kshea@pylerome.com

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by First Class Mail to those indicated as non-registered participants on this, the 17th day of April, 2015.

         <u>/s/ Jasper Groner</u>
         Jasper Groner